# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTH AND WELFARE FUND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> NORTH AMERICAN CLEANING SERVICES CO. INC. d/b/a Turtle Bay Building Services, <br><br> *Defendant*. | Civil Action No. 17-747 (RDM) |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiffs' Motion for Default Judgment. Dkt. 7. Plaintiffs are the Service Employees International Union Health and Welfare Fund ("the Fund"), and its trustees. Dkt. 1 at 2–3 (Compl. ¶¶ 5–6). The Fund is an employee benefit plan that provides health and welfare benefits to eligible employees, including some who work for Defendant, North American Cleaning Services Co., Inc. ("NACS"). *Id*. (Compl. ¶¶ 5, 9). According to Plaintiffs, Defendant agreed in its collective bargaining agreement with the Service Employees International Union Local 26 ("SEIU") to make certain monthly payments into the Fund and open its books to auditing to confirm compliance. *Id*. at 4–6 (Compl. ¶¶ 12–16). Defendant, however, failed to respond to Plaintiffs' request for documents after it was selected for an audit. As a result, Plaintiffs brought this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1947 to compel Defendant to turn over the required records. *Id*. at 5–6 (Compl. ¶¶ 19–25). Plaintiffs also seek attorney's fees and costs incurred in bringing this suit. *Id*. at 7 (Compl. ¶¶ 3–4). Defendant has

not appeared or responded to the Complaint. For the reasons explained below, the Court hereby **GRANTS** the Plaintiffs' motion for default judgment.

## I. BACKGROUND

On April 1, 2013, SEIU entered into a collective bargaining agreement ("CBA") with Defendant NACS, which was doing business as "Turtle Bay Building Services." *See* Dkt. 1-1; Dkt. 1 at 3 (Compl. ¶ 8). The CBA obligates NACS to make certain monthly contributions for eligible employees to the Fund. Dkt. 1 at 4 (Compl. ¶12); Dkt. 1-1 at 9. The CBA also binds Defendant to the Health Trust Agreement ("Trust Agreement"), which governs the Fund. Dkt. 1 at 4 (Compl. ¶ 13); Dkt. 1-1 at 10. The Trust Agreement subjects employers to several reporting requirements, two of which are relevant here. First, it requires employers to "submit complete remittance reports to the . . . Fund with [their] contributions," which "contain the names of each covered employee and the number of compensable hours for each employee during the reporting month." Dkt. 1 at 4 (Compl. ¶ 14). Second, the "Trust Agreement empowers the Trustees to audit the payroll records and books of any participating employer," which means the "employer is required to make its payroll records and books available to the Fund." *Id*. (Compl. ¶15); Dkt. 1-2 at 51–52.

The Fund selected NACS for an audit covering 2014 and 2015, and made requests on June 14, 2016, August 9, 2016, and September 19, 2016, for the information the Trust Agreement requires all covered employers to provide. Dkt. 1 at 5 (Compl. ¶19). NACS did not responded to these requests, nor did it acknowledge Plaintiffs' "final demand" letter sent on February 16, 2016. *Id*. After waiting several months, Plaintiffs filed suit in this Court on April 24, 2017, seeking an order that would "requir[e] the Defendant to timely provide such information as requested by the Fund in order to perform an audit of the Defendant," along with

a declaration that the Defendant was out of compliance with the CBA and Trust Agreement. *Id*. at 6–7 (Compl. ¶¶ 1–2). Plaintiffs also seek attorney's fees and other costs. *Id*. at 7 (Compl. ¶¶ 3–4).

Defendant has failed to appear or to respond to the Complaint. As previously recounted, *see* Dkt. 10, Plaintiffs served the Complaint on Defendant's Chief Executive Officer on May 10, 2017, Dkt. 4 at 2. Defendant's answer was due on May 31, 2017. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). On June 1, 2017, Plaintiffs filed an affidavit for default, Dkt. 5, and the Clerk entered a default the next day, Dkt. 6. On June 6, 2017, Plaintiffs moved for (1) an entry of default judgment; (2) an order that Defendant deliver certain records for audit; (3) an order that Defendant pay any delinquent amounts found as a result of that audit; and (4) an order that Defendant pay Plaintiffs for their attorney's fees and costs. *See generally* Dkt. 7; Dkt. 7-3. Plaintiffs served their motion on Defendant via first class mail. Dkt. 7 at 13.

Subsequently, the Court issued three orders to show cause. First, the Court ordered that Plaintiffs make at least a *prima facie* showing that personal jurisdiction over the absent defendant existed. *See* Dkt. 8. On June 13, 2017, the Plaintiffs replied, arguing that the nationwide service of process provisions in ERISA, the administration of the Fund within the District of Columbia, and the Defendant's contacts with the United States by virtue of its operation in Minnesota justified the Court's exercise of personal jurisdiction. The Court next ordered the Defendant to show cause on or before July 6, 2017, why the Court should not enter a default judgment against it, and ordered Plaintiffs to effect service of that order on the Defendant. Dkt. 10. Plaintiffs did so, *see* Dkts. 13, 14, and NACS's silence continued.

Finally, the Court ordered the Fund and its trustees show cause for awarding them attorney's fees and costs. Dkt. 11. The Court noted that, although ERISA authorizes

3

"reasonable attorney's fees," the "declaration setting forth [Plaintiffs'] attorneys' respective rates and hours billed on this matter, along with the relevant timesheets . . . lack[ed] sufficient detail for the Court to assess [the] factors" required by the statute. Dkt. 11 at 1. In response, Plaintiffs have submitted an additional declaration and exhibits that offer more evidence about the prevailing rates for similar legal work in the community and greater detail as to the costs of this litigation.

## II. ANALYSIS

### A. Default Judgment

Obtaining a default judgment requires two steps. At the first step, the plaintiff requests the Clerk of the Court to enter a default. If the Clerk determines that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the [C]lerk must enter the party's default." Fed. R. Civ. P. 55(a) (emphasis added). Upon entry of the default, the factual allegations of the complaint are deemed admitted, which usually establishes the defendant's liability. *See, e.g.*, *Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014); *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008). At the second step, the plaintiff must apply for a default judgment, either to the Clerk "for a sum certain or a sum that can be made certain by computation," or to the Court in "all other cases." Fed. R. Civ. P. 55(b)(1), (2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund*, 531 F. Supp. 2d at 57 (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). However, prior to entering a default judgment, the Court must assure itself that personal jurisdiction exists. *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Here, Plaintiffs have properly obtained a default

from the Clerk of the Court. For the reasons explained below, the Court now concludes that judgment by default should also be entered in favor of the Fund and its trustees.

As an initial matter, Plaintiffs have made the requisite *prima facie* showing that the Court has personal jurisdiction over NACS. *See Mwani*, 417 F.3d at 7; *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991). This suit is brought under ERISA, which provides that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Under this standard, NACS is subject to suit in this district. First, the Fund is administered in Washington, D.C. Dkt. 9 at 2. Second, although Plaintiffs do not allege any contacts between NACS and this district, "ERISA's venue provision 'has been interpreted to authorize nationwide service of process.'" *Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 28 (D.D.C. 2013) (*quoting Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 170–71 (D.D.C. 2003)). As this Court has previously explained, "jurisdiction over a defendant served pursuant to a federal statute with a nationwide-service-of-process provision is proper as long as the defendant has minimum contacts with the United States as a whole." *See Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 46 (D.D.C. 2011) (collecting cases); *see also SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004). Here, sufficient contacts with the United States as a whole exist because NACS is headquartered in Minneapolis, Minnesota, and conducts its business there. Dkt. 9 at 2; Dkt. 1 at 3 (Compl. ¶ 8). Plaintiffs have thus made a *prima facie* showing of personal jurisdiction.

Having "satisf[ied] itself that it has personal jurisdiction" over the absent defendant, *Mwani*, 417 F.3d at 6–7, the Court turns to the substance of the Plaintiffs' ERISA claims. The

statute provides that "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement." 29 U.S.C. § 1145. The facts alleged in the Complaint—which are taken as true by virtue of NAC's default—establish that NACS has failed to comply with the Trust Agreement and the CBA by refusing to provide the books and records necessary to conduct an audit covering January 2014 to December 2015. Dkt. 1 at 5 (Compl. ¶ 18); Dkt. 1-2 at 51 ("The Trustees shall have the authority, at the expense of the Trust Fund, to audit the payroll books and records of a participating employer . . . as they may deem necessary in the administration of the Trust Fund.").

NACS's breach of the Trust Agreement and the CBA provide ample bases for the limited relief Plaintiffs seek. As in previous cases brought in this Court, "equitable relief is warranted because defendant 'has demonstrated no willingness to comply with either its contractual or statutory obligations or to participate in the judicial process.'" *Serv. Employees Int'l Nat'l Indus. Pension Fund v. Tandem Dev. Grp., LLC*, No. CV 16-2524, 2017 WL 3530358, at *3 (D.D.C. Aug. 16, 2017) (quoting *Fanning v. Warner Ctr., L.P.*, 999 F. Supp. 2d 263, 267 (D.D.C. 2013)). NACS must open its books and participate in the audits as required by the CBA and the Trust Agreement.

**B.   Attorney's Fees**

ERISA authorizes the Court to award "reasonable attorney's fees and costs." 29 U.S.C. § 1132(g)(2)(D). However, "a fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995); *see also, e.g.*, *Eley v.*

*District of Columbia*, 793 F.3d 97, 103–05 (D.C. Cir. 2015); *Swanson v. Martins*, 232 F. Supp. 3d 23, 27 (D.D.C. 2017).  The Plaintiffs first request the $400 filing fee they paid to bring this suit.  They have submitted a declaration stating that the Fund paid the fee, Dkt. 16 at 4, and the docket also reflects the payment.  The Court will award this amount to Plaintiffs.

Plaintiffs also seek $2,764 in attorney's fees.  *See* Dkt. 16 at 4.  In support of this request, they offer a detailed declaration of counsel and billing records that reflect the number of hours worked and billing rates of the lawyers and staff who assisted with the case.  *See* Dkt. 16; Dkt. 16-1.  The Court has reviewed the invoices and declaration and concludes that they provide sufficient detail regarding the hours worked and tasks performed.  They also show that care was taken to minimize costs by delegating to more junior lawyers or legal assistants when feasible.

The Court is also satisfied that the billing rates and practices evidenced by the declaration and supporting exhibits are reasonable when considered in the context of the attorneys' skill, experience, and reputation, and as compared to the prevailing market rates in Washington, D.C.  The U.S. Attorney's *Laffey* Matrix for 2015-2017, for example, suggests that lawyers with experience commensurate to Diana Bardes and Lauren McDermott (between five and six years) are generally compensated at rates in excess of $332 an hour.  Dkt. 16-2 at 2.  By contrast, Bardes and McDermott billed their services at $195 an hour.  *See* Dkt. 16 at 4.  The senior partner on the case, John Mooney, has more than thirty-four years of experience and billed his time at $435 an hour, *id*. at 2, 4, significantly less than the *Laffey* rate for attorneys with that level of experience, which was more than $568 an hour during the time period relevant to this litigation.  Dkt. 16-2 at 2.  The pattern holds when it comes to paralegals, who were billed at $120 an hour in this case, Dkt. 16 at 4, despite a *Laffey* rate of $154 or more an hour, Dkt. 16-2 at 2.

Although these rates fall far below the rates set forth in the *Laffey* Matrix, the D.C. Circuit has cautioned against granting an application for attorney's fees without further "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services.'" *Eley*, 793 F.3d. at 104 (quoting *Covington*, 57 F.3d at 1109). "[E]vidence of the prevailing market rate can take many forms." *Id*. at 104 n.5. The Court may, for example, consider "affidavits reciting the precise fees that attorneys with similar qualifications have received . . . in comparable cases," *Covington*, 57 F.3d at 1109, and fee awards in similar cases, *see Swanson*, 232 F. Supp. 3d at 28 (D.D.C. 2017); *Ventura v. L.A. Howard Construction Co.*, 139 F. Supp. 3d 462, 464 (D.D.C. 2015). Counsel for Plaintiffs has presented both types of evidence. She notes that three comparable law firms performing similar work have frequently been awarded fees far in excess of those requested by Plaintiffs, both in terms of hourly rate and total amount. Dkt. 16 at 5–6. She also includes three declarations from those other firms detailing their fees in cases in which awards for attorney's fees were granted. Dkt. 16-3; 16-4; 16-5. In each case, the fees exceeded those sought by Plaintiffs, even though they involve similar matters and similar types of legal work performed by comparable firms. *See id.* The Court therefore finds the "requested rates [to be] in line with those prevailing in the community for similar services," *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109), and awards attorney's fees in the amount of $2,764 to the Fund and its trustees.

## CONCLUSION

The Court will, accordingly, grant Plaintiffs' motion for a default judgment.

A separate order will issue.


    <u>/s/ Randolph D. Moss</u>
    RANDOLPH D. MOSS
    United States District Judge

Date:  August 28, 2017